*Michael Puhl v. Hackney Kidron, et al.*

Notice of Removal

# EXHIBIT A

iJEMS

Welcome:Public User    Home (/main)    Register (/register)    Login (/login)    Public Search (/disclaimer)



| New Search | Search Result ✖ | Case Detail ✖ |

## Case Information

| Case# | Caption | Reference File | Judgment Amt | Filed Date | Case Type/Subtype | Status | Judge |
|-------|---------|----------------|--------------|------------|-------------------|--------|-------|
| 21CI03424 | MICHAEL PUHL VS. HACKNEY KIDRON | | | Sep/09/2021 | EMPLOYMENT DISPUTE DISCRIMINATION | ACTIVE | Rita Donovan Hathaway |

## Parties

| Party Type | Name | Address |
|------------|------|---------|
| DEFENDANT | VT HACKNEY KIDRON | 911 WEST 5TH STREET PO BOX 880, WASHINGTON, NC, 27889, USA |
| DEFENDANT | VT HACKNEY INC | 911 WEST 5TH STREET PO BOX 880, WASHINGTON, NC, 27889, USA |
| DEFENDANT | HACKNEY AND KIDRON | 911 WEST 5TH STREET PO BOX 880, WASHINGTON, NC, 27889, USA |
| DEFENDANT | ST ENGINEERING HACKNEY INC | 911 WEST 5TH STREET PO BOX 880, WASHINGTON, NC, 27889, USA |
| PLAINTIFF ATTY | LAWRENCE D KERR | 302 WEST OTTERMAN STREET , GREENSBURG , PA, 15601 |
| PLAINTIFF | MICHAEL PUHL/AKA | 352 DOGWOOD DRIVE, DELMONT, PA, 15626, USA |
| PLAINTIFF | MICHAEL D PUHL | 352 DOGWOOD DRIVE, DELMONT, PA, USA |

Events

| Action Date ▲ | Action Description | Action Name | View Document |
|---|---|---|---|
| Sep/09/2021 | *COMPLAINT CIVIL ACTION | *COMPLAINT CIVIL ACTION | View |

THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA
CIVIL DIVISION

MICHAEL PUHL,                              )     CIVIL DIVISION
                                           )
                                           )
        Plaintiff,                         )     No. 3424 of 2021
                                           )
            vs.                            )
                                           )     TYPE OF PLEADING:
HACKNEY KIDRON, VT HACKNEY INC.,           )
HACKNEY AND KIDRON,                        )     **COMPLAINT**
AND ST ENGINEERING HACKNEY, INC.,          )
                                           )
        Defendants.                        )
                                           )     Filed on Behalf of:
                                           )     Plaintiff
                                           )
                                           )
        FILED IN                           )     Counsel of Record:
   PROTHONOTARY'S OFFICE                    )     Lawrence D. Kerr
                                           )     PA ID #58635
        SEP 0 9 2021                        )     302 West Otterman
        [signature]                        )     Greensburg, PA 15601
   BY _____                          )     724-838-7600
        CLERK                              )
                                           )     Chelsea N. Forbes
                                           )     PA ID #327275
                                           )     302 West Otterman
                                           )     Greensburg, PA 15601
**TO: HACKNEY KIDRON, VT HACKNEY INC.** )     724-838-7600
**HACKENY AND KIDRON, AND ST.**            )
**ENGINEERING HACKNEY, INC.,**             )
                                           )
**You are hereby notified to**             )     **JURY TRIAL DEMANDED**
**file a written response to the**         )
**enclosed Complaint within**              )
**twenty (20) days of service**            )
**hereof or a judgment may be**            )
**entered against you.**                   )
                                           )
_____, Esquire           )
Lawrence D. Kerr, Esquire                  )

THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| MICHAEL PUHL, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. _____ of 2021 |
| | ) | |
| vs. | ) | |
| | ) | |
| HACKNEY KIDRON, VT HACKNEY INC., | ) | |
| HACKNEY AND KIDRON, | ) | |
| AND ST ENGINEERING HACKNEY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE TO DEFEND AND CLAIM RIGHTS

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**LAWYER REFERRAL SERVICE
WESTMORELAND BAR ASSOCIATION
P.O. BOX 565
GREENSBURG, PA  15601
(724) 834-8490
http://lrs.westbar.org**

COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| MICHAEL PUHL, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. _____ of 2021 |
| | ) | |
| vs. | ) | |
| | ) | |
| HACKNEY KIDRON, VT HACKNEY INC., | ) | |
| HACKNEY AND KIDRON, | ) | |
| AND ST ENGINEERING HACKNEY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**AND NOW COMES** the Plaintiff, Michael Puhl, by and through his attorneys, Lawrence D. Kerr, Esquire, Chelsea N. Forbes, Esquire, and Tremba, Kinney, Greiner & Kerr LLC, and files the within Complaint as follows:

1. Plaintiff Michael D. Puhl is a 52-year-old adult individual residing at 352 Dogwood Drive, Delmont, Westmoreland County, Pennsylvania.

2. Defendants VT Hackney Kidron, VT Hackney, Inc., Hackney and Kidron, and ST Engineering Hackney, Inc., are conglomerated business entities with main offices located at 911 West 5th Street, P.O. Box 880, Washington, North Carolina, 27889.

3. At all times relevant to this complaint, defendants regularly conducted business in Westmoreland County as

plaintiff routinely operated and worked for defendants within his home office located in Westmoreland County.

4. At all times relevant to this complaint, the plaintiff was employed by defendants.

5. During all times relevant to this complaint, defendants jointly employed and/or controlled the plaintiff and/or acted as a common enterprise in jointly employing and/or controlling the plaintiff.

6. Defendants are manufacturers of a variety of emergency vehicles, beverage trailers, refrigerator trailers, and utility bodies.

7. Defendants own and operated manufacturing facilities located in Pennsylvania, Washington, North Carolina, Ohio, and Kansas.

8. On or about October 23, 2017, defendants hired plaintiff as a district sales manager.

9. As stated, plaintiff worked remotely from his home in Delmont, Westmoreland County, Pennsylvania.

10. Plaintiff's job duties included, but were not limited to:

    a. Identifying prospective customers, following leads from existing customers, as well as attending trade shows and customer events;

    b. Contacting new and existing customers to discuss their needs and explain how defendants' products work;

    c. Emphasizing product features;

    d. Answering customer questions;

    e. Negotiating prices and terms of sale;

    f. Preparing sales quotations and submitting orders;

    g. Collaborating with colleagues to exchange information;

    h. Following up with customers; and

    i. Staying up to date on new products.

11. Plaintiff's original, immediate supervisor was Richard Ball, vice president of sales and marketing.

12. Plaintiff worked under Mr. Ball's supervision from plaintiff's date of hire until June 20, 2019, at which time Mr. Ball resigned.

13. Plaintiff did not have another immediate supervisor until October of 2019, at which time he became a direct report of Mitchell Lance, whose office was located in defendants' headquarters in North Carolina.

14. Plaintiff's first face-to-face meeting with Mr. Lance was on or about November 14, 2019, at the Courtyard Marriot Hotel, at the Homestead Waterfront in Homestead, Pennsylvania.

15. When plaintiff and Mr. Lance went to lunch at Primanti Brothers, Mr. Lance asked plaintiff (who had been employed by defendants for two years) how old he was. Plaintiff said he was 50 years old.  Mr. Lance replied that plaintiff

"looked surprisingly good for [his] age."  Mr. Lance remarked that he was "surprised at how old the sales force [is] at Hackney' and that "it [is] a concern."  Mr. Lance made general remarks about his concerns about the advanced age of the sales force, including his concern that "they could all retire on me at the same time."

16. On or about December 5, 2019, at a sales meeting at defendants' manufacturing facility in Independence, Kansas, Mr. Lance pulled the plaintiff into a separate room and told him that "with the age of the force being so old, [he] didn't understand why Richard [Ball] didn't hire someone younger than you."

17. On or about the morning of December 12, 2019, while having breakfast together at a hotel near the Raleigh-Durham airport, Mr. Lance again expressed his concerns about the "aging work force of our sales team."

18. During a telephone conversation with Mr. Lance on or about February 10, 2020, Mr. Lance told plaintiff that he needed someone to track customer supply parts, and that he "hoped to hire someone young due the aging workforce at Hackney."

19. On or about March 6, 2020, while plaintiff was driving home from the Work Truck Show in Indianapolis, he spoke with Mr. Lance by telephone regarding an open sales manager position. Plaintiff broached the idea of performing both

positions. Mr. Lance replied that he would consider plaintiff's offer but needed to think about it. Mr. Lance stated that he was not sure if it would work out because he believed he needed someone full time in the open position. He further stated that he thought it would be a good idea to bring someone onboard "with youthful eyes to look at things and energize the team."

20. On or about March 27, 2020 (21 days after Mr. Lance's comment that he wanted to bring someone onboard "with youthful eyes"), plaintiff received a telephone call from Mr. Lance and a human resource representative. They told plaintiff he was being terminated for three reasons:

   a. Poor sales;

   b. He was working for another company; and

   c. He was using company property to work for another company.

21. Plaintiff responded that his sales were, in fact, great, and that he had merely helped his wife temporarily with her company because her father had recently passed away.

22. Mr. Lance and the human resource representative responded by stating they "did not want to debate, and [they] were moving forward."

23. Defendants unlawfully and willfully terminated plaintiff because of his age.

24. Defendants' ostensible reasons for plaintiff's termination were a pretext for age discrimination.

25. Upon information and belief, Mr. Lance unlawfully discriminated against other employees because of their age.

26. On or about April 17, 2020, plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission. A true and correct copy of the Charge is attached as Exhibit A.

27. On or about June 14, 2021, plaintiff received a Dismissal and Notice of Rights from the Equal Employment Opportunity Commission, adopting the findings of the Pennsylvania Human Relations Commission. A true and correct copy is attached as Exhibit B.

28. It should be noted that plaintiff never received a determination from the Pennsylvania Human Relations Commission but files this timely complaint within the 90 days allotted by the EEOC Dismissal and Notice of Rights correspondence.

**COUNT I: Discrimination and Wrongful Discharge
in violation of the ADEA**

29. The previous paragraphs are incorporated by reference.

30. Plaintiff brings this claim under the Age Discrimination in Employment Act ("ADEA"), 29 USCA §621 *et. seq.*

31. The ADEA defines an "employer" as an industry with 20 or more employees for every working day in each of the 20 or more calendar weeks in the year in question or the preceding year. 29 USCA §630(b).

32. Defendants employed more than 20 employees during the relevant period.

33. The ADA defines an "employee" as an individual employed by any qualified employer. 29 USCA §630(f). Plaintiff was employed by defendants until March 27, 2020, at which time they wrongfully discharged him.

34. The ADEA is applicable to individuals at least 40 years of age. 29 USCA § 631. Plaintiff was 50 the time of his discharge.

35. The ADEA makes it unlawful for any employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 USCA § 623.

36. Plaintiff was discriminated against due to his age when he was terminated due to alleged poor sales and his involvement with another company on defendants' property.

37. In fact, plaintiff did not have poor performance reviews, nor was he reprimanded in the past for his work ethic or his failure to complete his assigned duties.

38. Plaintiff was permitted by the defendants' employee handbook to engage in employment with another company. Plaintiff is aware of other employees who work at second jobs. See a true and correct copy of defendants' employee handbook section regarding second jobs attached as Exhibit C.

39. Plaintiff did not use defendants' property to engage in employment with another company. See the true and correct attached e-mail correspondence from plaintiff's computer at defendants' company in which he agrees to merely provide his wife with information received attached as Exhibit D.

40. Defendants violated the ADEA when they discriminated against, harassed, and subjected plaintiff to a hostile work environment based upon his age by constantly bringing up the aging workforce within his department and subsequently terminating him for pretextual reasons.

41. Defendants acted willfully and with malice and reckless indifference.

42. As a result of the defendants' unlawful actions, plaintiff suffered damages in the form of past and future lost wages and benefits, and loss of earnings capacity.

**WHEREFORE**, Plaintiff, Michael Puhl requests judgment against the defendants in the form of back wages, full front pay, if applicable, actual damages, liquidated damages, costs of litigation, including reasonable attorney fees, witness fees and expenses, and interest on the judgment.

### COUNT II: Discrimination and Wrongful Discharge in violation of the Pennsylvania Human Relations Act

43. The previous paragraphs are incorporated by reference.

44. This count arises under the Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S. §§ 951 et seq.

45. Pennsylvania courts have held that, to the extent they are not inconsistent, the ADEA and PHRA are to be interpreted coextensively.

46. Venue is proper in this Court as all transactions and occurrences which gave rise to this action occurred in Westmoreland County.

47. Plaintiff has exhausted his administrative remedies under the PHRA. This claim is based on an administrative complaint filed with the PHRC and dual filed with the EEOC. More than a year has elapsed since his administrative complaint, and less than two years have elapsed since the PHRA terminated its investigations of plaintiff's claims.

48. The amount in controversy exceeds the sum of $30,000 for purposes of compulsory arbitration.

49. Defendant is an employer within the meaning of the PHRA, 43 P.S. § 954(b), in that the defendant employs four or more individuals within the Commonwealth of Pennsylvania.

50. By reason of the conduct set forth in Count I, the defendant unlawfully discriminated against plaintiff because of his age with respect to the terms, conditions, and privileges of employment, and then unlawfully discharged him because of his age in violation the PHRA, 43 P.S. §§ 951 et seq.

51. As a result of the defendant's actions, plaintiff has suffered loss of wages, loss of pension benefits, loss of insurance benefits, loss of other fringe benefits, loss of the opportunity to continue the gainful employment in which he had been engaged, loss of future earnings and front pay, humiliation, embarrassment and loss of self-esteem, and adverse health effects.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against the defendant and award plaintiff back pay, front pay, compensation for lost fringe benefits, and compensatory damages for humiliation, embarrassment and loss of self-esteem, plus attorney fees, costs and expenses in excess of $30,000.

## DEMAND FOR JURY TRIAL

Plaintiff Michael Puhl demands a trial by jury on all issues so triable.

Respectfully submitted,

TREMBA, KINNEY, GREINER & KERR, LLC

Date: _____

By: _____

Lawrence D. Kerr, Esq.
PA I.D. #58635
Chelsea N. Forbes, Esq.
PA I.D. #327275
Attorneys for Plaintiff
302 West Otterman Street
Greensburg, PA 15601
724-838-7600

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Tremba, Kinney, Greiner & Kerr, LLC

Signature: _____

Name: Lawrence D. Kerr, Esq._____

Attorney No. 58635_____

## VERIFICATION

I verify that the statements and averments made in the foregoing Pleading are true and correct. I understand that false statements herein are subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn verification to authorities.

Date: 9-7-2021

MICHAEL PUHL



**pennsylvania**
HUMAN RELATIONS COMMISSION

## PENNSYLVANIA HUMAN RELATIONS COMMISSION
## EMPLOYMENT DISCRIMINATION QUESTIONNAIRE

### 1. YOUR CONTACT INFORMATION

Name _Michael Puhl_

Address _352 Dogwood Dr_
          Street                             Apt. #
_Delmont_    _PA_       _15626_
  City          State        Zip Code

Phone Number: (H) _____ (Cell) _724/552-6338_

Work: _____ E-mail address: _puhlmd @ yahoo.com_

Name, address and phone number of a person, who does **NOT** live with you and will know how to contact you:

Name _Marge Puhl_    Phone Number _412/881-3439_

Address _3119 Schiech St_ _Ogl_ _Oa_ _15207_
      Street               City        State    Zip Code

### 2. AGAINST WHAT EMPLOYER DO YOU WANT TO FILE YOUR COMPLAINT?

Employer Name _VT Hackney Kidron_
          (Please use your employer's name as indicated on your paycheck or W-2 form)

Address in PA _914 Jaegers Station Rd._ _Montgomery_ _PA_ _17752_
         Street               City      State   Zip Code

Phone Number _570/547-1681_ E-mail address: _____

Pennsylvania county where you were harmed: _____

**NUMBER OF INDIVIDUALS WHO WORK FOR THE EMPLOYER:**

☐ Fewer than 4    ☐ 4 to 14    ☐ 15-20    ☑ 20+

Type of Business _Manufacturer_

Is the employer a federal agency?    ☐ Yes    ☑ No

### 3. DESCRIBE HOW YOU WERE HARMED, AND WHEN, SO WE CAN DETERMINE IF WE CAN ASSIST YOU. Check all that apply.

Write the date(s) you were harmed beside the discriminatory event or action:

☑ Discharge _3-27-2020_    ☐ Lay-Off _____    ☐ Failure to Recall _____

☐ Forced Transfer _____    ☐ Denied Transfer _____    ☐ Demotion _____

☐ Forced Leave _____    ☐ Le[  ]    ☐ Unequal Wages _____

**EXHIBIT**

_A_

Employment Discrimination Questionnaire, Rev. 8-13

☐ Unequal Benefits _____ ☐ Failure to Hire _____ ☐ Failure to Promote _____

☐ Discipline (Suspension, Warning, etc.) _____ ☐ Harassment* _____

*Complete question #7 if you were harassed

☐ Forced to Quit _____

Not accommodated because of your: ☐ Disability _____ ☐ Religion _____

OTHER, please be specific: _____

## 4. DO YOU FEEL YOU WERE TREATED DIFFERENTLY (DISCRIMINATED AGAINST) BECAUSE OF ANY OF THE CHARACTERISTICS BELOW?

The commission can investigate your complaint only if you believe you were treated differently and harmed because of your race, color, religion, ancestry, age, sex, national origin, non-job related disability or the use of a guide or support animal for blindness, deafness or physical disability.  For example, if you feel you were treated worse than someone else because of your race, please indicate race as the reason.  If you feel you were treated differently because of your race and sex, please check both race and sex.  **Only check reasons which explain why you were harmed.**  Also, please identify your race, color, religion, national origin or ancestry, etc. **if** you were discriminated against based on those factors.

☐ Male   ☐ Female   ☐ Pregnant

☑ Age (40 or older only):  Date of Birth   *12-07-1968* _____

☐ Race _____   ☐ Color _____

☐ Religion _____   ☐ Ancestry _____

☐ National Origin (country in which you were born) _____

☐ Association with a person of a different race than your own:

Your race _____ the other person's race _____

☐ Use of a guide or support animal _____

☐ Refusal to perform, participate in, or cooperate in abortion or sterilization services

☐ GED   ☐ Other _____

☐ I have a disability. (please complete #8)   ☐ The employer treats me as if I am disabled.

☐ I had a disability in the past.  (please complete #8)

☐ I have a relationship or association with someone who has a disability. (please complete #8)

## ☐ RETALIATION

If you believe you were harmed because you complained about what you believed to be unlawful discrimination, because you filed a complaint about unlawful discrimination, or because you assisted someone else in complaining about discrimination, please complete the following information.

Date you filed a complaint with the PA Human Relations Commission *@2/22/20* _____

If you filed a complaint with another agency, list the agency's name and date of filing:

_____

Date you complained about discrimination to a manager _____

Date you assisted someone in complaining about discrimination _____

## 5. WHEN WERE YOU HIRED OR WHEN DID YOU APPLY FOR A JOB WITH THE EMPLOYER?

Date you became an employee: _____10-16-17_____

Position for which you were hired: _____Regional Sale Mgr_____

What was your position at the time you were harmed? _____Regional Sales Mgr_____

If you were seeking to be hired by an employer:

When did you apply?_____ When did you learn you were not hired? _____

## 6. STATE THE REASONS THE EMPLOYER GAVE YOU FOR ACTIONS THAT HARMED YOU.

Poor Sales, Working for another company, Using Company property for another company (see attached)

Who told you about the employer's reasoning for the action? Include his or her job title.

Mitchell Lang, VP of Sale

When were you told about the action taken against you? (Date or Dates)

3-27-2020

If you were given no reason, please check here. ☐

Regarding how you were harmed, please identify a person or persons who were treated better than you. For example, as a **male employee** you were disciplined for a work violation, but a **female employee** who committed the same work violation was not disciplined.

Name of employee - First and Last (if known)

_____

How is this person **different** from you? For example, what is his or her race, age, religion, etc.?

_____

Please explain **exactly** how this person was treated better or differently than you. Include dates.

_____

_____

If you cannot identify someone who was treated better or differently than you, you need to describe an incident, statement, *etc.* which can be investigated, and which directly relates to why you were treated differently than someone else.

_____

## 7. IF YOU CHECKED ONE OF THE FOUR DISABILITY CATEGORIES IN #4, ANSWER THE FOLLOWING QUESTIONS.

What is your disability? _____

How long have you had this disability and when did it start?

Do you still have this disability? ☐ yes   ☐ no

If yes, how much longer do you expect to have the disability? _____

What major life activities do **you have great difficulty performing** because of your disability (Check all that apply.)

☐ Seeing   ☐ Hearing   ☐ Bending   ☐ Walking   ☐ Lifting   ☐ Stooping   ☐ Turning

☐ Climbing   ☐ Running   ☐ Talking   ☐ Standing for long periods

☐ Sitting for long periods   ☐ Caring for yourself   ☐ Thinking   ☐ Concentrating

☐ Relating to Others

Other Major Life Activities (**Be specific**) _____

If you have had a disability in the past, when did it start, and what date did it end? _____

If your employer treats you as if you are disabled:  What disability do they think or believe you have? _____

Who are the people that are treating you as disabled (names and positions or titles)?

_____

Why do you think that these people think or believe you have a disability?

_____

How did your employer learn about your disability? _____

On what date did they learn about your disability? _____

Which specific manager/official/agent) learned about your disability? (include title or position)

_____

If you are related to someone who has a disability, what is your relationship to this person?

_____

What is this person's disability? _____

How and on what date did the employer learn about this person's disability?

_____

Did you ask for an accommodation or assistance in order to do your job?   ☐ yes   ☐ no

IF YES,

    (1)  To whom did you make your request? _____

    (2)  What date was the request made? _____

    (3)  Explain what the accommodation or assistance was that you requested, and why.

_____

_____

Did the employer provide your requested accommodation or assistance?   ☐ yes   ☐ no

If so, on what date? _____

Did the employer provide some other accommodation or assistance instead?   ☐ yes   ☐ no

If yes, please explain. _____

_____

Did the employer deny your request for an accommodation or assistance?   ☐ yes   ☐ no

If so, who denied your request?

_____

What date was the request denied? _____

What reason was given to you for the denial? _____

_____

8.  **IF YOU CHECKED THAT YOU WERE HARASSED UNDER #3, ANSWER THE FOLLOWING QUESTIONS AS COMPLETELY AS POSSIBLE.**

Name the person(s) who harassed you: *Mitchell Lance*

His or her position or job title *VP of Sales*

When were you harassed?  Starting  date *11-14-19*      Ending date *3-27-20*

Is the harassment still continuing?   ☐ yes   ☐ no

How often did the harassment occur?  As well as possible, please indicate **date, month and** year of each incident and how often the harassing actions occurred.

☐ One time only _____        ☐ Once a day _____

  ☐ Several times daily _____

  ☐ multiple times/week _____

☑ multiple times/month _11/4/19_   _12/5/19_   _12/12/19_   _2/10/19_   _3/6/20_

Please provide two or three examples of the harassment you experienced.

_Please see attached for detail_

Did you consider any of the above acts of harassment to be especially severe and/or offensive?

☐ Yes ☐ No   If so, please explain why. _____

Did the harassment have a negative or harmful effect on your work environment, health or personal life?  If so, please explain:

Did you complain to anyone about the harassment?   ☐ Yes ☐ No

To whom did you complain?

| Name | Position or job title |
|---|---|

What date did you complain? _____

Did the harassment stop after you complained about it? ☐ Yes ☐ No

If it ended, on what date did it stop? _____

After you complained, were any other actions taken against you? (for example – discipline, discharge, etc.)  ☐ Yes ☐ No

What were the actions? _____

On what dates did they occur? _____

Who took the action against you? _____

Did this person know that you complained about the harassment? ☐ Yes ☐ No

Please identify someone who is different than you and who was treated better:

| Name | Position or job title |
|---|---|

Reason they were treated better than you as discussed in #4 above: _____

How were they treated better regarding the harassment?

9.  HAVE YOU BEEN INVOLVED IN ANY COURT ACTION REGARDING THIS MATTER?
    (COURT ACTION INITIATED BY YOU OR ANYONE ELSE.) IF SO, PLEASE SPECIFY
    THE COURT AND THE DATE FILED, TO THE BEST OF YOUR MEMORY.

☐ Yes  ☑ No  Court        City          County      State      Date filed

10.  IF YOU HAVE FILED THIS COMPLAINT WITH ANY OTHER LOCAL, STATE OR
     FEDERAL AGENCY, PLEASE ANSWER THE FOLLOWING:

Name of the agency with which you filed _____

Date of filing _____      Inquiry or Complaint number _____

11.  IF YOU WILL HAVE AN ATTORNEY REPRESENTING YOU ON THIS MATTER, PLEASE
     HAVE YOUR ATTORNEY SEND US A LETTER THAT CONFIRMS THIS. (YOU DO NOT
     NEED AN ATTORNEY TO FILE A COMPLAINT.)

            <u>YOU MUST SIGN AND DATE THIS FORM BEFORE RETURNING IT.</u>

☑ *I hereby verify that the statements contained in this form are true and correct to the
best of my knowledge, information and belief. I understand that false statements herein are
made subject to the penalties of 18 PA.C.S. Section 4904, relating to unsworn falsification to
authorities.*

Signature _____

Date _____ 4-17-2020 _____

IF YOU HAVE OTHER INFORMATION YOU BELIEVE WE NEED TO KNOW TO HELP US
UNDERSTAND YOUR COMPLAINT, PLEASE PROVIDE IT BELOW. FEEL FREE TO ATTACH
ADDITIONAL PAGES TO DESCRIBE WHAT HAPPENED TO YOU AS COMPLETELY AS
POSSIBLE.

_____ please see attached _____

# COMPANY RULES

## Company Ethics

We believe that honesty and truthfulness are each employee's personal responsibility.

We are committed to a code of ethics that ensures the highest level of integrity to our customers, suppliers, fellow employees and the public. VT Hackney expects all employees to obey plant rules and be honest and fair in their dealings with the company and their fellow employees.

This commitment to honesty and truthfulness is the most serious responsibility we as employees undertake and each of us must understand that we are responsible for our own acts and omissions. This expectation is not an occasional requirement, but a continuing commitment.

## Smoking/Use of Tobacco

For the health and safety of all employees, we have adopted a smoke/tobacco free environment in all of our buildings.  No smoking or use of tobacco products is permitted in the office areas or the plant.  Tobacco use is only allowed in designated areas on non-work time.  Tobacco use in Company vehicles is prohibited.  Locations may be subject to additional regulations due to State Law.

## Second jobs

VT Hackney does not prohibit employees from working second jobs. We do, however, prohibit employees from taking a second job with any competitor or any supplier, manufacturer or vendor that may be considered a conflict of interest.  Additionally, employees must consider employment with our Company as their primary job.  Second jobs cannot interfere with the performance level of their position with VT Hackney.

Work outside of VT Hackney may not be performed on VT Hackney premises or using our facilities and equipment. This also applies to the use of telephones for calls relating to outside employment.

If you have any question about whether a second job is a conflict of interest, please talk with Human Resources.



## PROGRESSIVE DISCIPLINE AND CORRECTIVE ACTION POLICY

The purpose of corrective discipline is to correct unacceptable levels of behavior and performance. The Company will choose to exercise its discretion to utilize forms of corrective action that are appropriate for the offense. Examples include verbal warning, written warning, final written warning, suspension without pay and termination.

The Company can terminate the employment relationship with any employee without following any particular series of steps when it determines, because of the severity of the offense, that such action should occur.

**Verbal Warning.** When your job performance falls below established standards or you are responsible for a minor violation, your supervisor will discuss the problem with you and tell you what you need to do to correct it.

**Written Warning.** You will be given a written administrative warning if the conditions that resulted in verbal counseling continue or there is a serious first violation. Your supervisor will discuss the problem with you and tell you what is necessary to correct it. It is your responsibility, as an employee, to take the action necessary to correct the situation.

**Final Written Warning and/or Suspension Without Pay.** You will be given a final written warning or a suspension without pay if the conditions that resulted in the previous disciplinary actions continue or there is a very serious first violation. Your supervisor will discuss the problem with you and tell you what you need to do to correct it. You will also be informed that another incident will result in termination. The final written warning or suspension without pay is the last step in the corrective action process prior to termination.

Suspension without pay will be for a specified period of time and requires the approval of the plant General Manager and the plant Human Resources Representative.

**Termination.** A recommendation for termination may be issued after you have received counseling, a written warning, suspension or it may be the first and only step in the disciplinary procedure if the offense warrants it. All recommendations for termination require the same approvals as a suspension without pay, including the approval of the plant General Manager.



RE: Unite Wake Forest

*C*

From:  Mitchell W. Lance (mlance@hackneyusa.com)

To:  wilsonfootball2@yahoo.com

Date:  Friday, April 17, 2020, 03:48 PM EDT

Michael.

Thanks for reaching out to us.  We are still a viable group.  Unfortunately our meetings have been put on hold due to the COVID-19 virus.  Please give me a call sometime I would love to speak with you.  If you would like I will put you on the email list for meeting updates.  We have a Facebook site that is a private group (Unite Wake Forest)

Regards,

Mitch

919-671-5506

**From:** Michael Wilson [mailto:wilsonfootball2@yahoo.com]
**Sent:** Friday, April 17, 2020 2:26 PM
**To:** Mitchell W. Lance
**Subject:** Unite Wake Forest

While looking for some help with my disabled daughter I ran across your name on Linkedin.  Is the Unite Wake Forest group still viable?  I can not find information on Facebook or any other site about it.  If it is, how can I get her and myself involved? As a previous D1 football player I know a lot of people who could speak to the group and can fundraise.  Please let me know what I can do.

Thank you,

Michael Wilson

***WARNING! THIS EMAIL ORIGINATES FROM OUTSIDE VT HACKNEY***

This message is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient or have received this communication in error, you are hereby notified that any unauthorized use or disclosure is strictly prohibited. Please notify the sender immediately and

Re: Information



Michael D. Puhl <MPuhl@vthackney.com>
Thu 3/19/2020 1:08 PM
To: Kitchin, Steve <skitchin@origlio.com>

Thank you I will send to my wife.



On Mar 19, 2020, at 12:34 PM, Kitchin, Steve <skitchin@origlio.com> wrote:



Michael

In these crazy times it is important to keep our employees safe. Here are some
numbers to get us going
The 3 locations are as followed:
Reading
Philadelphia x2 (The 2 location are within a half mile)

1. Reading total sq. ft. 70,000
   a. 10,000 office
   b. 60,000 warehouse

2. Philadelphia 3000 Meeting House total sq. ft. 270,000
   a) 70,000 office
   b) 200,000 warehouse

3. Philadelphia 2727 Southampton Road total sq. ft. 50,000
   a. 5,000 office
   b. 45,000 warehouse

Truck power units all 3 locations 150 units

Stay safe

Steve
***WARNING! THIS EMAIL ORIGINATES FROM OUTSIDE VT HACKNEY***



8:43

Background

**Co-Founder**
Unite Wake Forest
Oct 2018 - Present · 1 yr 6 mos

We are a group of people that are connected to children with disabilities transitioning to adulthood. We come together every other Friday to guide and inspire each other in the following areas that will build a future for the loved ones in our life.
• Transportation
• Employment
• Housing
 We have guest speakers at our meetings that we feel can guide us to the ultimate goal of helping adults with disabilities live their lives where and how they want to.

Members share their previous achievements to include the "how" that guides and inspires other members to better living for their loved ones.

**General Manager Board**
Of Directors
VT Mexico
Jan 2020 - Present · 3 mos

**Marketing and Supply Chain**
Management Advisory Board



*Mitchell Cane*
*LinkedIn*
*Mitchell is the*
*VP of Sales*

8:30                           5G

☰  USA TODAY
    NEWS                    Subscribe   Sign in

Larry Kimble, Master National director, said
the dogs had to pass at least four master
hunter tests within about the past year to
qualify.

"By the time they're here, we're looking at what
would be considered the ultimate finished
hunting retriever," said Kimble, of
Independence. Kimble is also a member of the
Kansas-based Sunflower Retriever Club, which
has been planning the event for about two
years.

Kimble estimated half the dogs or fewer will
pass the event.

📧 **Share your thoughts**

Tabla Feed



Larry is a
Regional Sales
Manager

2

Home | My Favorites | Lists | List Builder | Employers by Major | Employ Veterans | Locations | Industries | Blogs

# Tarhbel Motor Co

Action ▾

## Similar Companies Nearby
(Industry participants & competitors)

| Name | Empl. | Dist. (mil) |
|------|-------|-------------|
| Cd's Automotive Inc. | 2 | 27.2 |

## Contact Information
Tarhbel Motor Co
4961 Slatestone Rd
Washington, NC 27889

Contact:   Holton Willard
Title:        President
Phone:     (252) 623-9516
Website:

Tarhbel Motor Co is the only company located at
4961 Slatestone Rd, Washington, NC 27889

## Map

35°34'33.2"N 76°56'15.2"W
View larger map

## Business Description
Tarhbel Motor Co is located in Washington, North Carolina. This
organization primarily operates in the Aircraft Dealers business /
industry within the Automotive Dealers and Gasoline Service
Stations sector. This organization has been operating for
approximately 11 years. Tarhbel Motor Co is estimated to
generate $50,000 in annual revenues, and employs
approximately 2 people at this single location.

| | |
|---|---|
| Sector: | Automotive Dealers and Gasoline Service Stations |
| Category: | Automotive Dealers, nec |
| Industry: | Aircraft Dealers |
| SIC Code: | 5599 |

| | | | |
|---|---|---|---|
| Name: | Tarhbel Motor Co | Location Type: | Single |
| Year Founded: | 2009 | Revenue: | $ 50,000 |
| | | Employees Here: | 2 |
| Engaged In: | | Facility Size: | N/A |
| ☐ Manufacturing | | | * Revenue & Employees are estimates |
| ☐ Importing | | | |
| ☐ Exporting | | | |

## Statistics for Zipcode 27889
| | |
|---|---|
| Average House Value | $ 122,700 |
| Average Household Income | $ 40,167 |
| Number of Households | 11,215 |
| Persons per Household | 2.41 |

| | |
|---|---|
| Number of Businesses | 1,589 |
| Number of Employees | 9,744 |
| Land Area (square miles) | 196.293 |
| Water Area (square miles) | 12.763 |

Slatestone Rd

Joyce's Hairstyling

Slatestone Rd

Churc

Google

Report a map error   Map data ©2020

View larger map   Directions

## Demographics for Zipcode 27889

| Percentage | Population |
|------------|-----------|
| 64.1 % | White |
| 9.2 % | Hispanic |
| 29.4 % | Black |
| 0.5 % | Asian |
| 0.8 % | Native American |
| 0.1 % | Hawaiian |
| 6.4 % | Other |

bout Us | Partnerships | Terms of Use | Privacy Policy | Remove Company | Contact Us

Copyright © 2020 Buzzfile Media LLC. All Rights Reserved.
25 Broadway, Ste 1420, New York, NY 10004

| | |
|---|---|
| Population | 28,898 |
| Median Age | 40.4 |
| Male | 38.5 |

*Holton is a Regional Sales Manager*

## Questions & Answers

Q  How long has Tarhbel Motor Co been i
A  Tarhbel Motor Co has been in business

Q  Where is Tarhbel Motor Co located?
A  Tarhbel Motor Co is located at 4961 Sl                          ounty
and the Washington, NC Metropolitan Area

Q  Is there a key contact at Tarhbel Motor
A  Holton Willard is the President at Tar

Q  How many people work at Tarhbel Motor Co?
A  Tarhbel Motor Co has approximately 2 employees at this location.

Q  What are the annual sales for Tarhbel Motor Co?

*3*

# Rick Mott Realtor- Premier Property Group

MARCH 17, 2016MARCH 18, 2016 / RICK MOTT / LEAVE A COMMENT



I have lived in Independence Kansas all my life and have lots of connections. I have been a real estate agent for 10 years. Call me for all your real estate needs in SE Kansas. I can list your home or business. Trying to find the perfect family home. I will work with you to find the home you are looking for. Give me a call at 620-331-9729

Rick is a
Regional Sales
Manager

4

| | CY2019 Beverage | CY2019 Special Apps | CY2019 Shelving Kits | CY2019 Shelving Accessories | CY2019 Coolers | Total | CY2020 Beverage | CY2020 Special Apps | CY2020 Shelving Kits | CY2020 Shelving Accessories | CY2020 Coolers | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| January | $2,020 | $204 | $77 | $50 | $0 | $2,351 | $5,199 | $500 | $0 | $10 | $288 | $6,096 |
| February | $4,133 | $2,308 | $713 | $109 | $0 | $7,263 | $7,060 | $0 | $307 | $13 | $0 | $7,380 |
| March | $4,051 | $735 | $270 | $51 | $0 | $5,109 | $5,591 | $1,320 | $598 | $0 | $0 | $7,509 |
| April | | | | | | | | | | | | $0 |
| May | | | | | | | | | | | | $0 |
| June | | | | | | | | | | | | $0 |
| July | | | | | | | | | | | | $0 |
| August | | | | | | | | | | | | $0 |
| September | | | | | | | | | | | | $0 |
| October | | | | | | | | | | | | $0 |
| November | | | | | | | | | | | | $0 |
| December | | | | | | | | | | | | $0 |
| Total | $10,205 | $3,247 | $1,060 | $210 | $0 | $14,723 | $15,350 | $1,900 | $905 | $22 | $298 | $18,485 |

2020 Sales
Compared To
2019 Sales...

5

| Years | Sales | Avg mth | March % | Gross Sales | Pace Margins | Pace Margin % | Pace Sales Forecast | Leases |
|---|---|---|---|---|---|---|---|---|
| | 553,613 | 81,592 | 34.7% | 3,198,653 | 471,420 | 14.7% | 3,900,000 | 855,000 |
| | 1,394,472 | 143,889 | 10.3% | 8,055,216 | 831,359 | 10.3% | 10,500,000 | 855,000 |
| | 221,253 | 41,089 | 18.6% | 1,278,351 | 237,403 | 18.6% | 9,000,000 | 32,729 |
| | 982,087 | 91,093 | 23.2% | 2,265,390 | 526,313 | 23.2% | 3,600,000 | 93,000 |
| | 1,962,385 | 96,058 | 4.9% | 11,338,951 | 555,001 | 4.9% | 4,700,000 | |
| | 589,669 | 128,178 | 21.7% | 3,408,861 | 740,575 | 21.7% | 3,050,000 | |
| | 5,723,113 | 581,959 | 11.4% | 29,544,721 | 3,196,071 | | | |

| Sales | Margins | Margin % | Pace Sales | Pace Margins | Pace Margin % | Pace Sales Target | Leases | Interest |
|---|---|---|---|---|---|---|---|---|
| 553,613 | 81,592 | 14.7% | 3,198,653 | 471,420 | 14.7% | 3,900,000 | 855,000 | |
| 1,394,472 | 143,889 | 10.3% | 8,055,216 | 831,359 | 10.3% | 10,500,000 | 855,000 | |
| 221,253 | 41,089 | 18.6% | 1,278,351 | 237,403 | 18.6% | 9,406,000 | 32,729 | |
| 982,087 | 91,093 | 23.2% | 2,265,390 | 526,313 | 23.0% | | | |
| | 21,093 | | | | | | | |

=VLOOKUP($A12,'Pvt Bev'.HA!$D,$32:$N$63,4,FALSE)

## 2020 Revenue

| | B | C | D | E | F | H | J |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| Miguel Spiteri | 2,100,000 | #N/A | | #N/A | 175,000 | 175,000 | 175,000 |
| Quincy Spruill | 350,000 | #N/A | | #N/A | | | 36,889 |

Our company handbooks states "VT Hackney does not prohibit employees from working second jobs" (Attachment A). I have attachments (Attachment #1- #4) from my boss, Mitchell Lance VP of Sales and co-workers Larry Kimble, Holton Woodward and Rick Mott that prove they all play (or played) parts in other companies while being employed with VT Hackney. An explanation of my dismissal for this reason was because I used company equipment when an email from one of VT Hackney's top customers inquired about my wife's business on my VT Hackney's email. I never forwarded the email to my wife's business, I just replied to VT Hackney's customer that I will send the information to my wife (Attachment C). Attached also is an email from a non-Hackney customer to Mitchell Lance that Mr. Lance replied to using VT Hackney company equipment regarding a non VT Hackney organization that Mr. Lance is the co-founder (Attachment D). He replied to that email in depth regarding his organization.

Our company handbook outlines a "progressive discipline policy" (Attachment B). I was never given any discipline (written or verbal) for my job performance. I have attached my sales reports comparing 2019 to 2020. As you can see, my sales have increased in January 2020 compared to January 2019 (Attachment 5). As you can see my margins were the highest in the company (Attachment 6). In percent margin I was the highest in the company. Attachment 7 is a total revenue spreadsheet that shows I was on track to hit 63% to my 2020 target.

The first time I met Mr. Lance was on November 14, 2019 in Homestead, PA at his hotel. When we went to lunch at Primanti Brothers, he asked me how old I was, about my family and stated that I look surprisingly good for my age. He was surprised how old the sales work force is at Hackney and that it is a concern.

On December 5, 2019 in Kansas during a sales meeting he stated with the age of the work force being so old, I don't understand why Richard didn't hire someone younger than you.

On the morning of December 12, 2019, I met Mr. Lance for breakfast at my hotel in North Carolina. Mr. Lance spoke of the aging work force of our sales team and it was a concern for him.

During my one on one call on February 10, 2020 with Mr. Lance, he mentioned he needed someone to track customer supply parts. He had hoped to hire someone young due to the aging workforce at Hackney.

On March 6, 2020 on my way home from the work truck show, I spoke to Mr. Lance regarding an open sales manager position. I offered an idea of me doing both, the sales manager and still selling in my territory. Mr. Lance said he would entertain the offer and needed to think about it. He wasn't sure if it would work out because he believes he needs someone full time in that position. He also thought it would be a good idea to bring someone on board with youthful eyes to look at things and energize the team.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Michael Puhi<br>352 Dogwood Drive<br>Delmont, PA 15626 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1000<br>Philadelphia, PA 19107 |
|---|---|---|---|

| [ ] | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17F-2020-61595 | Damon A. Johnson<br>State, Local and Tribal Program Manager | (267) 589-9722 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[X]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>**WITHIN 90 DAYS**</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

*Dana R Hutter*

| | Dana R. Hutter<br>Deputy Director | 06/14/2021 |
|---|---|---|
| Enclosures(s) | | (Date Issued) |

cc:  For Respondent:

Keith Fox
ST Engineering
Hackney, Inc.
400 Hackney Avenue
Washington, NC 27889

**EXHIBIT**

*B*

Enclosure with EEOC
Form 161 (11/2020)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within**
**90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or
record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was
*issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred more than 2 years (3 years) before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

*A*   30

# COMPANY RULES

## Company Ethics

We believe that honesty and truthfulness are each employee's personal responsibility.

We are committed to a code of ethics that ensures the highest level of integrity to our customers, suppliers, fellow employees and the public. VT Hackney expects all employees to obey plant rules and be honest and fair in their dealings with the company and their fellow employees.

This commitment to honesty and truthfulness is the most serious responsibility we as employees undertake and each of us must understand that we are responsible for our own acts and omissions. This expectation is not an occasional requirement, but a continuing commitment.

## Smoking/Use of Tobacco

For the health and safety of all employees, we have adopted a smoke/tobacco free environment in all of our buildings.   No smoking or use of tobacco products is permitted in the office areas or the plant.  Tobacco use is only allowed in designated areas on non-work time.  Tobacco use in Company vehicles is prohibited.  Locations may be subject to additional regulations due to State Law.

## Second Jobs

VT Hackney does not prohibit employees from working second jobs. We do, however, prohibit employees from taking a second job with any competitor or any supplier, manufacturer or vendor that may be considered a conflict of interest.   Additionally, employees must consider employment with our Company as their primary job.  Second jobs cannot interfere with the performance level of their position with VT Hackney.

Work outside of VT Hackney may not be performed on VT Hackney premises or using our facilities and equipment. This also applies to the use of telephones for calls relating to outside employment.

If you have any question about whether a second job is a conflict of interest, please talk with Human Resources.



# PROGRESSIVE DISCIPLINE AND CORRECTIVE ACTION POLICY

The purpose of corrective discipline is to correct unacceptable levels of behavior and performance. The Company will choose to exercise its discretion to utilize forms of corrective action that are appropriate for the offense. Examples include verbal warning, written warning, final written warning, suspension without pay and termination.

The Company can terminate the employment relationship with any employee without following any particular series of steps when it determines, because of the severity of the offense, that such action should occur.

**Verbal Warning.** When your job performance falls below established standards or you are responsible for a minor violation, your supervisor will discuss the problem with you and tell you what you need to do to correct it.

**Written Warning.** You will be given a written administrative warning if the conditions that resulted in verbal counseling continue or there is a serious first violation. Your supervisor will discuss the problem with you and tell you what is necessary to correct it. It is your responsibility, as an employee, to take the action necessary to correct the situation.

**Final Written Warning and/or Suspension Without Pay.** You will be given a final written warning or a suspension without pay if the conditions that resulted in the previous disciplinary actions continue or there is a very serious first violation. Your supervisor will discuss the problem with you and tell you what you need to do to correct it. You will also be informed that another incident will result in termination. The final written warning or suspension without pay is the last step in the corrective action process prior to termination.

Suspension without pay will be for a specified period of time and requires the approval of the plant General Manager and the plant Human Resources Representative.

**Termination.** A recommendation for termination may be issued after you have received counseling, a written warning, suspension or it may be the first and only step in the disciplinary procedure if the offense warrants it. All recommendations for termination require the same approvals as a suspension without pay, including the approval of the plant General Manager.


VT Hackney

## Re: Information



Michael D. Puhl <MPuhl@vthackney.com>
Thu 3/19/2020 1:08 PM
To: Kitchin, Steve <skitchin@origlio.com>

Thank you I will send to my wife.


On Mar 19, 2020, at 12:34 PM, Kitchin, Steve <skitchin@origlio.com> wrote:


Michael

In these crazy times it is important to keep our employees safe. Here are some numbers to get us going
The 3 locations are as followed:
Reading
Philadelphia x2 (The 2 location are within a half mile)

1. Reading total sq. ft. 70,000
   a. 10,000  office
   b. 60,000 warehouse

2. Philadelphia 3000 Meeting House total sq. ft. 270,000
   a) 70,000 office
   b) 200,000 warehouse

3. Philadelphia 2727 Southampton Road total sq. ft. 50,000
   a. 5,000 office
   b. 45,000 warehouse

Truck power units all 3 locations 150 units

Stay safe

Steve
***WARNING! THIS EMAIL ORIGINATES FROM OUTSIDE VT HACKNEY***



**EXHIBIT**